

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America ex rel. )
LIZELL BRYANT, )
 )
    Petitioner, )
 ) 11 CV 8681
    v. )
 ) Honorable Charles R. Norgle
GERARDO ACEVEDO, Acting Warden, )
 )
    Respondent. )

**OPINION AND ORDER**

Before the Court is Petitioner Lizell Bryant's ("Bryant") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Bryant's petition is denied.

**I. BACKGROUND**

**A. Facts**

A state court's factual findings are "presumed to be correct" on federal habeas corpus review unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Court takes the following facts from the relevant Illinois state court opinions. Following a bench trial, Bryant was convicted of the aggravated battery and attempted first-degree murder of his wife, Evelyn Bryant ("Evelyn"), and sentenced to 30 years' imprisonment. Bryant and Evelyn married in 1991, but later separated in 1997. Evelyn moved into an apartment in Des Plaines, Illinois while Bryant lived in an apartment in Joliet, Illinois. Despite the separation, Evelyn and Bryant continued to see each other occasionally.

On October 20, 1998, Bryant arrived at Evelyn's apartment around 10:00 p.m. At some point thereafter, Bryant struck Evelyn on the head, knocking her to the floor where he continued

to beat her with his fists. Bryant also hit her over the head several times with a vase and a brass candlestick and covered her face with pillows. He told Evelyn that she was going to die, that he hoped she said goodbye to her grandchildren, and that if anyone came to the door her would kill her. When Evelyn tried to run towards the door, Bryant grabbed her and stabbed her twice in the chest with a kitchen knife. Once Evelyn got control of the knife, she ran to the kitchen in order to call the police. Bryant, however, ran after her and ripped the phone off the wall, smashing it to the floor. Eventually, Bryant left and Evelyn was able to reach a neighbor for help. Bryant was arrested a few hours later, after Evelyn gave a description of him and his car to the police.

**B. Procedural History**

In 1998, Bryant was indicted on charges of aggravated battery and attempted first-degree murder. Bryant proceeded to a jury trial where he was found guilty of aggravated battery, but the jury was unable to return a verdict on the attempted murder charge. Subsequently, Bryant requested, and was granted a new trial. For his retrial, Bryant waived his right to a jury and agreed to a bench trial. The trial court found Bryant guilty on both the aggravated battery and attempted first-degree murder charges.

Although the statutory maximum was 30 years, the trial court sentenced Bryant to an extended-term of 60 years' imprisonment. Bryant then appealed his conviction and sentence, arguing, *inter alia*, that his extended-term sentence violated <u>Apprendi v. New Jersey</u>, which provides that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). The Illinois Appellate Court remanded the case for resentencing based on <u>Apprendi</u>, finding that "the evidence is not clear that the crime was

exceptionally brutal and heinous and reasonable juries could disagree." People v. Bryant, 758 N.E.2d 430, 438 (Ill. App. Ct. 2001).

On remand for resentencing, Bryant made a motion to substitute judges based on the alleged bias of the trial court, which was denied. Bryant proceeded to resentencing pro se and the trial court sentenced him to 30 years' imprisonment. Once again, Bryant filed a timely appeal.

In his second direct appeal, Bryant argued that the court erred in denying his motion to substitute judges and that he was denied representation at his resentencing hearing. The appellate court upheld the denial of his motion to substitute judges, but, after the State admitted to error regarding his lack of representation, the court remanded his case once again for a second resentencing.

At his second resentencing, Bryant was represented by a Cook County public defender and called several witnesses in mitigation. Although the State did not call any witnesses in aggravation, it submitted evidence that Bryant had a previous conviction in 1981 for three-counts of involuntary manslaughter after he shot and killed his then-wife and her parents. The trial court sentenced Bryant to 30 years' imprisonment.

After his second resentencing, Bryant filed a third direct appeal, arguing that the trial court acted "arbitrarily and punitively" in sentencing him to 30 years. State Ct. R. Ex. N., at p. 10. The appellate court affirmed his sentence, finding that "the trial court had an ample basis for sentencing defendant to 30 years in prison and did not abuse its discretion in doing so. Put another way, we conclude that the trial court has not shown defendant prejudice . . . but has merely judged his case as [is] its power and duty under the law." State Ct. R. Ex. Q, at p. 9.

3

On September 3, 2008, Bryant filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. Bryant argued that the appellate court "overlooked critical facts and evidence, and has misapprehended the arguments presented on appeal" and that the trial court was biased against him. State Ct. R. Ex. V, at p. 2. The PLA was denied on November 26, 2008.

Meanwhile, Bryant filed a post-conviction petition before the trial court on July 5, 2002, which the trial court summarily dismissed on July 12, 2002 because his direct appeal was still pending. Following Bryant's appeal of that ruling, the State conceded error, and the Illinois Appellate Court remanded for further post-conviction proceedings. Although Bryant was originally represented by appointed counsel, he refused the services of the public defender and his attorney was granted leave to withdraw. Bryant then continued pro se, filing supplemental materials. His motion remained pending until 2008.

On September 5, 2008, the trial court held a hearing on Bryant's post-conviction petition, during which Bryant once again refused the services of the public defender and proceeded pro se. Bryant demanded that the trial court make an immediate ruling on the long-pending motion, even though the State had not yet responded or moved to dismiss. The trial court then dismissed Bryant's post-conviction and supplemental post-conviction motions, finding that he failed to state a meritorious claim for relief.

Bryant appealed the dismissal of his post-conviction petitions, arguing that the trial court erred by denying him counsel on his post-conviction motion and by dismissing his motion *sua sponte*. On March 25, 2011, the appellate court found that Bryant was given his statutory right to appointed counsel—which he refused—and "was not prejudiced in such a manner to warrant appointment of private counsel." State Ct. R. Ex. GG, at p. 24. The court further ruled that

Bryant was estopped from arguing that the trial court committed a procedural error in dismissing his petition.

On May 9, 2011, Bryant filed a PLA with the Illinois Supreme Court, seeking review of the appellate court's decision regarding his post-conviction petition, which was denied on September 28, 2011. Bryant then timely filed the instant habeas petition which is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "Federal habeas relief from a state-court criminal judgment is not easy to come by because the Antiterrorism and Effective Death Penalty Act of 1996 (the 'AEDPA') requires [federal courts] to defer to a great extent to the decisions of the state courts." Kamlager v. Pollard, 715 F.3d 1010, 1015 (7th Cir. 2013) (internal quotation marks and citation omitted). Section 2254(d) sets a high hurdle for habeas relief. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Pursuant to the AEDPA, "a writ of habeas corpus shall not be granted unless the state-court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence' before the state court." McElvaney v. Pollard, 735 F.3d 528, 532 (7th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). For purposes of habeas relief, the Court reviews "'the last reasoned opinion on the claim'" from the state court—here the March 25, 2011 opinion

of the Illinois Appellate Court. Woolley v. Rednour, 702 F.3d 411, 421 (7th Cir. 2012) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

"Generally, a petitioner must raise a claim in state court before raising it on federal habeas review. This exhaustion requirement includes raising both the broad claim . . . but also the specific arguments and 'operative facts' within that claim." McNary v. Lemke, 708 F.3d 905, 919 (7th Cir. 2013) (internal quotation marks and citations omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004). "Procedural default generally precludes a federal court from reaching the merits of a *habeas* claim when the claim was not presented to the state courts and it is clear that the state courts would now find the claim procedurally barred." Bolton v. Akpore, 730 F.3d 685, 696 (7th Cir. 2013). A claim is also considered procedurally defaulted if the state court denied a claim based "on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

In either case, however, "[p]rocedural default may be excused . . . if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." Bolton, 730 F.3d at 696. "A prisoner may demonstrate cause for a procedural default by showing 'that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'" Crank v. Duckworth, 969 F.2d 363, 365 (7th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1985)). "Prejudice means, an error which so infected the entire trial that the resulting conviction violates due process." Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010) (internal quotation marks and citation omitted). Lastly, in order to demonstrate a fundamental

miscarriage of justice, a habeas petitioner must show "that a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "no reasonable juror would have convicted [the petitioner] in the light of the new evidence." Id. at 387 (internal quotation marks and citation omitted).

**B. Bryant's Constitutional Claims**

In the instant motion, Bryant argues ten grounds for relief based on alleged constitutional violations.

### 1. *Excessive and oppressive bail*

First, Bryant argues that the trial court set excessive and oppressive bail during his pretrial detention in violation of his Eighth Amendment rights. Bryant, however, failed to present this claim at every level of the state court before raising it here. The claim is therefore procedurally defaulted. See Bolton, 730 F.3d at 694. In any event, because Bryant is now incarcerated as a result of his conviction, not a pre-trial detention, and the issue is not likely of repetition between Bryant and Illinois, his claim is now moot. See Murphy v. Hunt, 455 U.S. 478, 481 (1982) ("[W]e find that Hunt's constitutional claim to pretrial bail became moot following his convictions in state court.").

### 2. *Excessive bail shows bias of trial court*

Second, Bryant argues that the allegedly excessive bail set during his pretrial detention shows that the trial court was biased against him and that the trial court's reference to his wife, Evelyn, as a "victim" showed that it presumed him to be guilty. It is unclear under which constitutional right Bryant brings this claim. Nevertheless, although Bryant consistently questioned the bias of the trial court, this particular claim was not presented for complete review by the state courts, and therefore, it is procedurally defaulted. See Bolton, 730 F.3d at 694.

7

### 3. Ineffective Assistance of Trial, Appellate, and Post-Conviction Counsel

Third, Bryant argues that he received ineffective assistance from his trial, appellate, and post-conviction counsel. As an initial matter, the Court notes that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" is not "a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Accordingly, Bryant's claim for ineffective assistance of post-conviction counsel in the state court is rejected as non-cognizable on federal habeas review.

Bryant's claims for ineffective assistance of trial and appellate counsel likewise fail. While Bryant raised the broad issue of "ineffective assistance of counsel" in his PLA before the Illinois Supreme Court, he failed to articulate his claims and arguments beyond bare allegations of incompetence. Thus, his claims for ineffective assistance of trial and appellate counsel are procedurally defaulted. See McNary, 708 F.3d at 919 (stating that in order to establish exhaustion, a habeas petitioner has to have raised the broad claim as well as the specific arguments at each level of the state court review).

### 4. Trial court erred in failing to provide conflict-free counsel

Fourth, Bryant claims that the trial court erred when it declined to appoint him private counsel as opposed to the Cook County Public Defender's office for purposes of his state court post-conviction petition. Bryant argues that this violated his "Constitutional right to have conflict free representation because attorneys working for the same office is [sic] not going to argue effectively against one of there [sic] own." Pet. for Writ of Habeas Corpus, at p. 25. There is, however, "no constitutional right to an attorney in state post-conviction proceedings." Coleman, 501 U.S. at 752 (citing Penn. v. Finley, 481 U.S. 551 (1987)). Because Bryant had no

constitutional right to post-conviction counsel, his claim of error or conflict in that regard is not cognizable; therefore, this claim is denied.

### 5. *Double Jeopardy*

Fifth, Bryant argues that he was placed in double jeopardy in violation of his Fifth Amendment rights when he was re-tried in a bench trial. In Bryant's first trial, the jury found him guilty of aggravated battery and was hung on the attempted murder charge. Bryant then requested a new trial, which the trial court granted. Subsequently, Bryant waived his right to a jury and proceeded to a bench trial where he was found guilty of attempted first degree murder and aggravated battery. This claim is procedurally defaulted for failure to raise it in a complete round before the state court in the first instance. See Bolton, 730 F.3d at 694. In any event, it is well-established that "a retrial following a 'hung jury' does not violate the Doubly Jeopardy Clause." Richardson v. United States, 468 U.S. 317, 324 (1984) (citing Logan v. United States, 144 U.S. 263, 297-298 (1892)). Thus, this claim is without merit.

### 6. *Trial court bias and cumulative errors*

Sixth, Bryant argues that his right to a fair trial was violated by the bias of the trial court as well as its cumulative errors. With respect to Bryant's "cumulative error" argument, the Court finds that it is procedurally defaulted because he failed to raise this argument before any level of the state court. See Bolton, 730 F.3d at 694.

As to his judicial bias claim, Bryant challenged the bias and/or prejudice of the trial court in both his second and third direct appeals. In his second direct appeal, Bryant challenged the denial of his motion for substitution of judge brought pursuant to 725 Ill Comp. Stat. 5/114-5, arguing that the comments made by the trial court during his first sentencing—that Bryant was cruel, cold blooded, ruthless, and genuinely evil—showed that the trial court could not be

9

impartial when resentencing him on remand. The Illinois Appellate Court subsequently rejected this argument, upholding the denial of Bryant's motion for substitution of judge. In his third direct appeal, Bryant argued that the trial court abused its discretion and demonstrated its prejudice against him by failing to consider mitigating evidence of his rehabilitative potential in imposing an allegedly excessive sentence of 30 years' imprisonment. The Illinois Appellate Court likewise rejected this argument and found that the trial court did not abuse its discretion, nor did it show prejudice against Bryant.

In order to avoid a procedural default under federal habeas review however, Bryant must have alleged the "federal nature" of his judicial bias claims, if any, before the state court in the first instance. Crockett v. Hulick, 542 F.3d 1183, 1192 (7th Cir. 2008); see also McDowell v. Lemke, No. 12-2967, 2013 U.S. App. LEXIS 24735, at *13 (7th Cir. Dec. 12, 2013) ("At bottom, we must consider whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." (internal quotation marks and citation omitted)). The Seventh Circuit focuses on four factors to determine whether the state court was sufficiently alerted to the federal claim: "(1) whether the habeas petitioner relied on federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4) whether the petition alleges a pattern of facts within the mainstream of constitutional litigation." Id. "If none of the four factors is present and the state has not otherwise signaled its satisfaction with the presentment of the federal claim, then this court will not consider the state courts to have had a fair opportunity to consider the claim." Wilson v. Briley, 243 F.3d 325, 327-328 (7th Cir. 2001) (internal quotation marks and citation omitted).

Here, Bryant did not rely on federal cases or state cases applying a federal constitutional analysis in either of his appeals alleging judicial bias; nor did Bryant frame his claims in terms of a federal constitutional right. Rather, he relied solely on Illinois statutes and precedent and the Illinois Constitution. Lastly, the Court finds that Bryant's arguments, grounded solely in Illinois law, fail to allege "a pattern of facts within the mainstream of constitutional rights"—particularly with respect to his allegation that the trial court abused its discretion in imposing a 30-year sentence. McDowell, 2013 U.S. App. LEXIS 24735, at *13; see also Wilson, 243 F.3d at 328 ("'Abuse of discretion' and 'improper factors' are not terms that Illinois lawyers and judges, by quirk of local legal idiom, use to articulate constitutional arguments. To the contrary, abuse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards." (internal citations omitted)). Accordingly, Bryant's claims of judicial bias are procedurally defaulted.

### 7. *Ineffective assistance of trial counsel and jury waiver*

Seventh, Bryant claims that he received ineffective assistance of counsel in violation of his Sixth Amendment rights when his trial counsel allegedly tricked, manipulated, and coerced him into waiving his right to a jury at his re-trial. Bryant's allegations regarding his allegedly unknowing jury waiver—couched in terms of ineffective assistance of counsel or otherwise—were not raised before the Illinois Appellate Court. Therefore, this claim is procedurally defaulted. See Bolton, 730 F.3d at 694.

### 8. *Failure to follow post-conviction procedures*

Eighth, Bryant alleges that his due process rights were violated when the trial court and the State failed to follow Illinois's post-conviction procedures pursuant to the Illinois Post-Conviction Hearing Act, 725 Ill. Comp. Stat. 5/122-1, et seq. This claim, however, is grounded

11

solely in state law and "'federal habeas corpus relief does not lie for errors of state law.'" Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson, 131 S. Ct. at 16 (internal quotation marks and citations omitted). Accordingly, this claim is dismissed.

### 9. *Delays and error of trial court in post-conviction proceedings*

Ninth, Bryant argues that his due process rights were violated by the various delays of the state courts in ruling on his post-conviction petitions, as well as the decision of the trial court to dismiss his state court post-conviction petition *sua sponte*. Bryant's arguments regarding procedural delays, however, are based solely on what he perceives to be violations of the Illinois Post-Conviction Hearing Act, a state law. Because this claim is not rooted in federal law, it is not cognizable on federal habeas review. Id.

With respect to Bryant's claim that the trial court erred in dismissing his petition without a response or motion to dismiss having been filed by the State, the Illinois Appellate Court found that Bryant was estopped from relief because he demanded an immediate decision, thereby consenting to or inducing the court to make a procedural error. The court found:

> Where the party invites or acquiesces to a procedural error, that party is estopped from claiming during appeal that the trial court erred. [People v. Swope, 821 N.E.2d 283, 287 (Ill. 2004)] In this case, defendant demanded an immediate decision. The trial court after consulting the State made a decision and dismissed the claim. Although a procedural error was committed when the State neither filed a motion to dismiss or answer, defendant demanded an immediate ruling and consequently received one. He therefore is estopped from relief.

State Ct. R. Ex. GG, at p. 26. Consistent with Illinois precedent, the appellate court decided the issue on the basis of state-law "acquiescence," not on constitutional grounds. See Swope, 821 N.E.2d at 288 (finding that the appellate court should have addressed the issues regarding

12

acquiescence before addressing possible due process arguments because "a court should avoid constitutional questions where the case may be decided on other grounds." (internal quotation marks and citations omitted)). Because the state court resolved this claim on an independent and adequate state law ground, it is barred from federal habeas review. See Coleman, 501 U.S. at 729 ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").

### *10. Brady violation*

Tenth, Bryant argues that the State failed to turn over allegedly favorable and exculpatory evidence in violation of his rights pursuant to Brady v. Maryland, 373 U.S. 83 (1963). The alleged evidence consists of Bryant's briefcase and the contents therein, which at some point were lost or destroyed by the State or the police when they took possession of Bryant's vehicle or by the lien holder when the vehicle was repossessed. Bryant "maintains that in the briefcase was a letter from Evelyn apologizing for physically injuring him on a prior occasion which would show her violent tendencies and affect her credibility." Bryant, 758 N.E.2d at 435. Although Bryant presented this claim to the Illinois Appellate Court, he failed to present it in his subsequent PLA to the Illinois Supreme Court. Thus, Bryant's Brady claim is procedurally defaulted. See Bolton, 730 F.3d at 694 (stating that a petitioner's federal claims must be presented for a complete round of state court review, "including a state supreme court with powers of discretionary review" before seeking habeas relief).

### C. Cause and Prejudice or a Fundamental Miscarriage of Justice

To the extent that Bryant's claims are procedurally defaulted, he can overcome the defaults only if he can show cause and prejudice for the defaults or that a fundamental

13

miscarriage of justice would result if the claims are defaulted. Id. at 696. Bryant appears to argue that ineffective assistance of counsel was the cause and prejudice for all of his defaulted claims. Because the ineffective assistance of counsel claim itself was not fairly presented for a complete round of state court review, however, it cannot establish the requisite cause for overcoming the procedural default of his other claims. See Lewis, 390 F.3d at 1026 ("[A] claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim." (citing Edwards v. Carpenter, 529 U.S. 446, 452-454 (2000))).

With respect to his argument regarding a fundamental miscarriage of justice, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013). "'This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'" Id. (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)). While Bryant alleges a fundamental miscarriage of justice generally, he fails to provide any evidence to support his actual innocence claim. Bryant merely concludes that his wife may have perjured herself on the stand and that her testimony generally lacked credibility. These vague allegations are insufficient to meet the high threshold to establish a valid claim of actual innocence. Smith, 598 F.3d at 387. Because Bryant cannot establish cause and prejudice or a fundamental miscarriage of justice to overcome his procedural defaults, his habeas petition fails.

## III. CONCLUSION

For the foregoing reasons, Bryant's petition for habeas relief pursuant to § 2254 is denied. Because Bryant can neither "make a substantial showing of the denial of a constitutional right," nor show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," Slack v. McDaniel, 529 U.S. 473, 484 (2000), the Court denies a Certificate of Appealability.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: December 19, 2013